UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RONALD WEATHERS**                                  **CIVIL ACTION**

**VERSUS**                                           **NO. 18-9075**

**DEPUY SYNTHES, INC., ET AL**                       **SECTION: "B"(3)**

### ORDER AND REASONS

Before the Court are defendant St. Tammany Parish Hospital Service District No. 2 d/b/a Slidell Memorial Hospital's ("SMH") motion to dismiss (Rec. Doc. 12), defendants DePuy Synthes, Inc. and DePuy Synthes Sales, Inc.'s ("DePuy") motion to dismiss (Rec. Doc. 14), plaintiff Ronald Weathers' response (Rec. Doc. 23), DePuy's motion to dismiss plaintiff's amended complaint (Rec. Doc. 24), plaintiff's response (Rec. Doc. 25), and DePuy's reply (Rec. Doc. 28). Accordingly,

**IT IS ORDERED** that SMH's motion to dismiss (Rec. Doc. 12) is **GRANTED** and plaintiff's claims against SMH are **DISMISSED WITHOUT PREJUDICE** with the right to renew pending review by a Louisiana medical review panel;

**IT IS FURTHER ORDERED** that DePuy's motion to dismiss (Rec. Doc. 14) is **DISMISSED AS MOOT; and**

**IT IS FURTHER ORDERED** that DePuy's motion to dismiss plaintiff's amended complaint (Rec. Doc. 24) is **DENIED in part and GRANTED in part, as explained below.**

**FACTS AND PROCEDURAL HISTORY**

This is a personal injury lawsuit involving health care personal injury, pharmaceutical personal injury, and product liability. On August 15, 2017, at SMH, plaintiff underwent surgery to repair a fracture to his right hip/femur. *See* Rec. Doc. 12-1 at 2. To repair the fracture, the surgeon installed a hip implant into plaintiff's body. *See id*. The hip implant is known as the Trochanteric Fixation Nail System ("TFN System"). *See* Rec. Doc. 21 at 1. Plaintiff purchased it from SMH. *See id*. at 3. The TFN System consists of a series of cannulated nails, blades, screw, and end caps as well as locking bolts and screws. *See id*. at 2. DePuy manufactures, markets, and sells the TFN System. *See id*.

On August 15, 2018, plaintiff filed a lawsuit in the Twenty-Second Judicial District for the Parish of St. Tammany against SMH and DePuy. *See* Rec. Doc. 12-1 at 2. On October 1, 2018, DePuy filed a notice of removal. *See id*. Soon thereafter, SMH and DePuy both filed motions to dismiss for failure to state a claim. *See* Rec. Doc. Nos. 12, 14. Plaintiff sought leave to amend his complaint. *See* Rec. Doc. 20. On November 19, 2018, plaintiff filed an amended complaint no longer listing SMH as a defendant.[1] *See* Rec. Doc. 21. Plaintiff alleges the TFN System shifted within his body after installation and injured him. *See* Rec. Doc. 24-1 at 3.

---

[1] On October 23, 2018, SMH filed a motion to dismiss. *See* Rec. Doc. 12 at 1. On November 27, 2018, plaintiff filed a response. *See* Rec. Doc. 23. Despite plaintiff's amendment, the Court will address SMH's motion to dismiss.

Specifically, the shift occurred because one of the device's locking bolts were either manufactured or defectively designed. *See id.* From DePuy, plaintiff seeks, *inter alia*, to recover the purchase price of the TFN System, damages for medical treatment, lost wages, ongoing disability, pain and suffering, and attorney's fees.

**LAW AND ANALYSIS**

    **A. Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met his or her burden, a court "accept[s] all well-pleaded factual allegations as true

3

and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B. SMH's Motion to Dismiss (Rec. Doc. 12)**

Pursuant to the Louisiana Medical Malpractice Act ("LMMA"), La. Rev.Stat. §40:1231.8(b)(1)(a)(i), no action alleging medical malpractice claims against a qualified healthcare provider may be commenced in any court before being presented to a LMMA medical review panel. If a plaintiff files a medical malpractice action against a qualified healthcare provider before bringing his claims in front of a LMMA medical review panel, his action is considered premature and may be dismissed. *See Garber v. Oppenheimer*, 2005 U.S. Dist. LEXIS 11593, at *6 (E.D. La. June 2, 2005). Here, Plaintiff concedes that his action against SMH is premature. *See* Rec. Doc. 23 at 1. Furthermore, Plaintiff filed an amended complaint not listing SMH as a defendant. *See* Rec. Doc. 21. Therefore, SMH is no longer a part of this lawsuit. Plaintiff's claims against SMH are dismissed without prejudice. *See Garber*, 2005 U.S. Dist., at *7.

4

**C. DePuy's Motion to Dismiss Amended Complaint (Rec. Doc. 24)**

Louisiana law applies to plaintiff's product liability and redhibition claims as Louisiana law has the greatest and most compelling factual connection to his claims. *See Robinson v. Am. Marine Holdings, Inc.*, 2002 U.S. Dist. LEXIS 8341, at *9-11 (E.D. La. Apr. 30, 2002). DePuy sets forth compelling argument that Louisiana law applies to both claims, citing to case law and state articles as support. *See* Rec. Doc. 24-1 at 4-6. Plaintiff disputes DePuy's analysis and conclusion but offers no countervailing analysis.[2] Plaintiff seems to suggest Nevada law may apply here; however, it appears "any ruling by the Court in this case, and any verdict rendered by the jury, will have no direct impact on [Nevada's] policy interests, [residents[3], or economy]." *Robinson*, 2002 U.S. Dist. LEXIS 8341, at *30. Accordingly, the Court will apply Louisiana law in its analysis of the plaintiff's claims.[4]

---

[2] Plaintiff states Louisiana choice-of-law rules are applicable here, there is a false conflict between Louisiana and Nevada law, and each issue of this case must be analyzed separately to establish whether Louisiana or Nevada law applies here. *See* Rec. Doc. 25 at 1.

[3] Notwithstanding plaintiff, who was domiciled in Nevada at all times material here. *See* Rec. Doc. 21 at 1.

[4] Federal courts are obliged to apply the choice of law rules of the forum state in diversity cases. Accordingly, Louisiana's choice of law rules dictate whether the substantive law of Louisiana or another state applies to a plaintiff's claims. Louisiana choice of law provisions distinguish between contractual claims and those classified as delictual or quasi-delictual; however, Louisiana courts use the same analysis to determine the appropriate substantive law. Both of the applicable articles, *inter alia*, direct courts to evaluate the strength and pertinence of the relevant state policies in light of the pertinent contacts of each state to the parties. *See Robinson v. Am. Marine Holdings, Inc.*, 2002 U.S. Dist. LEXIS 8341, at *9-11 (E.D. La. Apr. 30, 2002);*see also* La.Civ. Code art. 3542 (regarding delictual actions); La.Civ. Code art. 3537 (regarding conventional obligations).

5

The Louisiana Products Liability Act (the "LPLA") provides the exclusive theories of liability for manufactures for damage caused by their products. *See Hilton v. Atlas Roofing Corp.*, 2006 U.S. Dist. LEXIS 30284, *6 (E.D. La. May 17, 2016). A claimant may recover for damage proximately caused by a characteristic of a product that makes the product unreasonably dangerous. *See* LA. REV. STAT. § 9:2800.54. "A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Hilton*, 2006 U.S. Dist. LEXIS 30284, at *6. The four exclusive theories available to a plaintiff are: (1) defective construction or composition; (2) defective design; (3) inadequate warning; or (4) breach of warranty. *See id*. Plaintiff alleges the TFN System was unreasonably dangerous because of its defective construction or composition or, in the alternative, defective design. *See* Rec. Doc. 21 at 2.

Pursuant to the LPLA, the "unreasonably dangerous in construction or composition" provision provides a remedy for damage caused by a product that is defective due to a mistake in the manufacturing process. *See* LA. REV. STAT. § 9:2800.55. To prevail on a claim under this provision, plaintiff must show that "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications

6

or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." *Id*.

Plaintiff has stated a manufacturing defect claim upon which relief can be granted. Citing to case law outside of this District[5], DePuy argues plaintiff's manufacturing defect claim is conclusory as he has pled nothing more than "because the TFN System broke, it must have had a manufacturing defect." Rec. Doc. 24-1 at 9-11. Plaintiff alleges in his amended complaint that the locking bolt of the TFN System was defective, did not fulfill its intended purpose, and deviated from the manufacturer's specification by lacking sufficient strength to prevent the movement that occurred in plaintiff's body. *See* Rec. Doc. 21 at 2-4. These allegations, when liberally construed together as true, "leave open the possibility that [the TFN System] was different from others in the same product line" and nudge plaintiff's claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570; *Hargrove v. Boston Sci. Corp.*, 2014 U.S. Dist. LEXIS 135262, at *31 (E.D. La. 2014). Therefore, DePuy's motion to dismiss as to plaintiff's manufacturing defect claim is denied.

Pursuant to the LPLA, a product is unreasonably dangerous in design if, at the time the product left the manufacturer's control:

---

[5] *Lirette v. DePuy Mitek, L.L.C.*, 2014 U.S. Dist. LEXIS 149725, at *81 (W.D. La. October 16, 2014).

(1) there existed an alternative design for the product that was capable of preventing the plaintiff's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design. *See* LA. REV. STAT. § 9:2800.56; *see also Aucoin v. Amneal Pharms., LLC*, 2012 U.S. LEXIS 100889, at *33 (E.D. La. July 20, 2012). Plaintiff must allege sufficient facts to allow the Court to draw the reasonable inference that the elements for a design defect will be met. *See Alexander v. GlaxoSmithKline, LLC*, 2015 U.S. Dist. LEXIS 122801, at *10 (E.D. La. Sept. 14, 2015). A mere recital of law is insufficient. *See id*.

Plaintiff's amended complaint meets this burden as plaintiff goes further than a mere recital law. Plaintiff's amended complaint reads that there existed an alternative design "since it is possible to design a locking bolt which will not allow movement of the two part of the TFN System after they are installed in a patient's body." Rec. Doc. 21 at 5. By specifically pointing to the locking bolt of the TFN System, plaintiff alleges what aspect of the TFN System's design caused his injuries. *See Watson v. Bayer Healthcare Pharms., Inc.*, 2013 U.S. Dist. LEXIS 52296, at *13 (E.D. La. Apr. 11, 2013). Furthermore, by alleging that "the locking bolt mechanism lacked sufficient strength to prevent movement[,]" plaintiff alleges how the defective design relates to his injuries.

*See id*. Plaintiff alleges that the danger of the damage outweighed the burden on the manufacturer of adopting the alternative design. *See* Rec. Doc. 21 at 5; *contra Aucoin*, 2012 U.S. LEXIS 100889, at *33. Therefore, plaintiff has stated a defect design claim upon which relief can be granted. DePuy's motion to dismiss the amended complaint as to plaintiff's design defect claim is denied.

DePuy asserts plaintiff may not recover for damages for personal injury outside of the LPLA so such claims, specifically his redhibition claim, must be dismissed. *See* Rec. Doc. 24-11 at 11. However, plaintiff does not seek such a claim and merely asks for the return price of the device. *See* Rec. Doc. 21 at 7. To grant DePuy's motion to dismiss as to plaintiff's redhibition claim would be inappropriate. *See Alexander*, 2015 U.S. Dist. LEXIS 122801, at *13 citing to *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 115 (La. App. 4 Cir. 5/14/04)("Courts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss."). DePuy's motion to dismiss as to plaintiff's redhibition claim is denied. Plaintiff's claims for attorney's fees are limited to those related to the recovery of economic loss.[6] *See Hargrove*, 2014 U.S. Dist. LEXIS 135262, at *40.

---

[6] On May 3, 2019, counsel for plaintiff filed motions to withdraw which were granted. *See* Rec. Doc. Nos. 32, 33, 34.

Any other claims falling outside of the LPLA are dismissed. *See Hilton*, 2006 U.S. Dist. LEXIS 30284, at *6. Plaintiff may not recover attorney's fees under the LPLA. *See id*. at *39 ("The LPLA expressly bars the recovery of attorney's fees.").

New Orleans, Louisiana, this 3rd day of July 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE